# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA LYNNE NEWMAN,       )
                            )
      Plaintiff,           )    Civil Action No. 10-127 Erie
                            )
    v.                      )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,  )
                            )
      Defendant.           )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

## I.    INTRODUCTION

Melissa Lynne Newman ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed her applications in November 2006, alleging disability since October 9, 2006 due to "[m]anic depression, anxiety attacks, mood swings [and] stress" (AR 90-96; 126).[1] Her applications were denied and she requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 61-70). Following a hearing held on December 12, 2008 (AR 19-58), the ALJ concluded, in a written decision dated February 19, 2009, that Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 10-18). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed her complaint in this Court on May 24, 2010 challenging the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the following

---

[1] References to the administrative record [ECF No. 5], will be designated by the citation "(AR ___)".

1

reasons, the Commissioner's motion will be denied and the Plaintiff's motion will be granted only to the extent she seeks a remand for further consideration.

## II. BACKGROUND

Plaintiff was 31 years old on the date of the ALJ's decision and has a high school education and completed one year of college (AR 16; 130). She has past relevant work experience as a cashier/sales clerk (AR 127). Plaintiff reported that she stopped working full time on October 9, 2006 due to an inability to handle stress (AR 126).

Prior to her alleged onset date, Plaintiff was treated by William Mix, M.D., her primary care physician, for complaints of depression from January 7, 2005 through April 28, 2006 (AR 169-182). On January 7, 2005, Plaintiff presented for a physical examination and complained of insomnia (AR 176). She reported a past history of depression but denied any previous hospitalizations (AR 176). Plaintiff complained that she was "moody" and "snappy" with suicidal thoughts, but had no plan (AR 176). Dr. Mix restarted her on Elavil and prescribed a trial of Zoloft for her symptoms, and recommended she begin counseling (AR 176).

Plaintiff returned to Dr. Mix for follow up on June 7, 2005 and reported an improvement in her symptoms on medication (AR 175). She reportedly suffered from two anxious episodes but otherwise did fairly well (AR 175). Dr. Mix reported that her affect had improved and she was smiling and talkative (AR 175). She was diagnosed with PMS, insomnia, and depression/anxiety (AR 175). She was continued on her medication regimen and was encouraged to begin counseling (AR 175). One month later on July 5, 2007, Plaintiff reported no problems with her medications, but requested a higher dosage amount due to problems with her mood (AR 174). Dr. Mix diagnosed her with PMS based anxiety/depression and increased her Zoloft dosage (AR 174). On December 2, 2005 Plaintiff reported that the increased Zoloft dosage made her feel "zoned out" but the lower dosage was ineffective in controlling her mood (AR 173). Dr. Mix reported that she was mildly depressed and started her on Wellbutrin (AR 173).

On March 3, 2006, Plaintiff reported that the Wellbutrin had not helped her symptoms. She complained of irritability, mood swings, sleep disturbances, appetite fluctuations and

2

memory and concentration problems (AR 171). On mental status examination, her affect was reported as appropriate, and her mood was, on occasion, "sad" at times (AR 171). She was prescribed Wellbutrin and Celexa, and encouraged to keep her appointment with a mobile therapist for evaluation and consideration of bipolar treatment if appropriate (AR 171).

On March 13, 2006, Plaintiff was seen at Stairways Behavioral Health and a treatment plan was formulated (AR 223). Areas to be addressed were her medications and depression (AR 223). Plaintiff was to continue her medications as prescribed and report any reduced depressive symptoms (AR 223).

Plaintiff returned to Dr. Mix on March 31, 2006, and reported no change in her symptoms on Celexa (AR 170). She further reported suffering one or two panic attacks associated with a fight with her boyfriend (AR 170). Plaintiff stated that work was very stressful, and she occasionally suffered panic attacks at work (AR 170). She was diagnosed with persistent depression and situational panic attacks, and her Celexa dosage was increased (AR 170). On April 28, 2006, Plaintiff was doing well on Celexa but still complained of occasional panic attacks (AR 169). She was diagnosed with improved depression and continued on Celexa (AR 169).

On May 22, 2006, a psychiatric evaluation was performed by Sean Su, M.D. from Stairways Behavioral Health (AR 183-185). Plaintiff reported that she lived with her boyfriend and five year old son, and was employed part time at a convenience store (AR 183). She presented with complaints of depression and mood instability, for which she recently sought help from her primary care physician (AR 183). Plaintiff stated that she suffered from various problems, including mood, appetite and sleep disturbances, difficulty concentrating, poor energy levels, increased anxiety and irritability, and feelings of hopelessness (AR 183). Plaintiff reported that her depressive symptoms had improved since her medication was increased, but that during the three weeks prior to the evaluation, she was more irritable, had mood swings and a high energy level (AR 183). She denied a history of manic episodes or psychotic symptoms (AR 183).

Plaintiff reported that she took Celexa as prescribed by her primary care physician and had been previously prescribed Zoloft without results (AR 183). She indicated that her Celexa dosage was recently increased and had helped with her depressive symptoms, but she suffered from increased irritability (AR 183). She denied having any suicidal or homicidal thoughts (AR 183). She reported problems with verbal agitation, but had not been physically assaultive towards others (AR 183).

On mental status examination, Dr. Su reported that Plaintiff was fully oriented, her speech was coherent and goal directed, and her long term and short term memory were intact (AR 184). He found her to be of average intelligence, with "fair" insight and judgment (AR 184). Dr. Su found that her affect at times was excessively bright and that she appeared "somewhat hypo-manic" (AR 184). He diagnosed her with major depressive disorder, and rule out bipolar disorder, and assigned her a global assessment of functioning[2] ("GAF") score of 55 (AR 184-185). Dr. Su continued her on Celexa for her depression and added Lamictal for her mood instability (AR 185; 230). She was to continue outpatient psychiatric treatment through Stairways (AR 185).

On July12, 2006, Stairways progress notes reflect that, following three psychiatric appointments and eight individual therapy sessions, Plaintiff's treatment goal of an improved mood had not been met (AR 222). On July 19, 2006 Dr. Su doubled Plaintiff's Lamictal dosage

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 to 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 41 to 50 may have "[s]erious symptoms (e.g., suicidal ideation ....)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 31 to 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood"; of 21 to 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., ... suicidal preoccupation)" or "inability to function in almost all areas ...; and of 11 to 20 may have "[s]ome danger of hurting self or others ... or occasionally fails to maintain minimal personal hygiene ... or gross impairment in communication...." *Id.*

(AR 230). On November 11, 2006, progress notes reflect that Plaintiff's treatment goals remained unmet (AR 221). On November 11, 2006, Dr. Su discontinued Celexa and prescribed Effexor (AR 230).

Clinical Psychologist Byron E. Hillin, Ph.D., performed a psychological evaluation of Plaintiff on January 26, 2007 (AR 186-193). Dr. Hillin reported that Plaintiff was cooperative with the evaluation, provided information freely and consistent with previous psychiatric reports from Stairways, and appeared truthful (AR 186). Plaintiff stated that she worked 20 to 25 hours per week at a convenience store, and could only work part-time because she became "too stressed" if she worked more hours (AR 186). She claimed to carry a good deal of anger which resulted in occasional outbursts, which caused her to have difficulty with co-workers and authority figures (AR 186). She also complained of low energy at times, as well as feelings of tearfulness, helplessness and hopelessness (AR 186). Plaintiff relayed her mental health treatment history, including her previous medications (AR 187). She indicated that her current medications helped alleviate her symptoms and that counseling had been beneficial (AR 187). She stated that she continued however, to find herself moody and depressed (AR 187).

On mental status examination, Dr. Hillin reported that Plaintiff was fully oriented, appeared mildly anxious with nervous laughter, and her speech was relevant, coherent and goal directed (AR 189). Her affect was appropriate, and she appeared mildly anxious and mildly tearful in discussing past losses (AR 190). Dr. Hillin found her thoughts were relevant, coherent and goal directed, with no loosening of associations or flight of ideas (AR 190). Her general intelligence was in the average to low average range, her attention and concentration were fair, her long-term and short-term memory were intact and her social judgment remained intact (AR 190).

Dr. Hillin diagnosed Plaintiff with major depressive disorder, single episode, mild, and avoidant personality features, and assigned her a GAF score of 65 (AR 190). He found that she continued to perform most activities of daily living, including cooking, cleaning, shopping, caring for her child and working part-time (AR 191). He found that her cognitive abilities, attention and concentration, speech and language, motor skills, and problem solving abilities

5

remained intact (AR 191). He indicated that Plaintiff would be able to do simple, repetitive tasks, as well as more moderately complex tasks (AR 191). He found her ability to relate to others mildly compromised by her irritability and somewhat labile mood, and that her "[c]oping appear[ed] fair to fragile" (AR 191). Dr. Hillin stated that she needed continued psychiatric care to help stabilize her moods and that her prognosis remained favorable (AR 191).

Dr. Hillin concluded that Plaintiff's ability to understand, remember, and carry out instructions were not affected by her mental impairments (AR 192). He also concluded that she was only slightly limited in her ability to interact appropriately with the public; and moderately limited in her ability to interact appropriately with supervisors and co-workers, and respond appropriately to work pressures in a usual work setting (AR 192). He also found her slightly to moderately limited in her ability to respond appropriately to changes in a routine work setting (AR 192).

On March 6, 2007, Ray M. Milke, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had mild limitations in completing activities of daily living and in maintaining concentration, persistence or pace, and moderate limitations in maintaining social functioning (AR 208). Dr. Milke completed a mental residual functional capacity assessment form, and opined that Plaintiff was only moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, get along with co-workers, maintain socially appropriate behavior, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others (AR 194-195). Dr. Milke found that Plaintiff was not significantly limited in all other work-related areas (AR 194-195).

Dr. Milke found that Plaintiff suffered from major depression with avoidant personality disorder features (AR 196). He concluded that she was socially isolated but could sustain an ordinary routine and adapt to routine changes without special supervision, and could function in production oriented jobs requiring independent decision making (AR 196). He found she could perform most of her daily activities, was able to manage her own benefits, and that her prognosis remained favorable (AR 196). He noted that Dr. Hillin had assigned her a GAF score of 65,

which indicated only mild functional limitations (AR 196). Dr. Milke found Dr. Hillin's assessment of Plaintiff's functional abilities "fairly consistent" with "the other evidence in the file" and gave it "appropriate weight" (AR 196). He concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment (AR 196).

On May 9, 2007, Plaintiff returned to Stairways and complained of increased mood swings, anxiety, insomnia and irritability (AR 220). Plaintiff reported that she was quitting her job because she was "too stressed out" to handle it (AR 220). She was diagnosed with bipolar disorder and Dr. Su increased her Lamictal dosage (AR 220). At her visits in August 2007 and October 2007, Plaintiff reported that her medications were helpful in controlling her symptoms (AR 217). She indicated that her mood was more stable and she felt less irritable (AR 217). It was reported that Plaintiff seemed stable on her current medications, and she denied any suicidal thoughts or symptoms of psychosis (AR 217). At her October 2007 visit, Plaintiff complained of sleep problems, and Trazodone was added to her medication regimen (AR 217).

Plaintiff returned to Stairways on December 19, 2007 and reported that she was "doing well" on her medications, although she complained of suffering from an allergic reaction to her medications (AR 216). She was seen by Matthew Sipple, D.O., who reported on mental status examination that her affect was bright and her mood was good, and she denied any suicidal thoughts (AR 216). Dr. Sipple found her mood stable and continued her medications (AR 216). On December 26, 2007, Plaintiff reported that her depressive symptoms were stable, but she acknowledged having occasional thoughts of self-harm without plan or intent (AR 214).

On February 18, 2008, Plaintiff complained of insomnia when seen by Dr. Sipple (AR 215). Her mental status examination was within normal limits, except for mild anxiety (AR 215). She reported no further allergic reaction episodes (AR 215). Dr. Sipple found her mood was stable and there was no change in her medications (AR 215).

When seen by Dr. Sipple on April 17, 2008, Plaintiff complained of sleep problems and mood swings (AR 213-214). Dr. Sipple reported that her mood and affect were "anxious" and her "anxiety state" was mild (AR 213). Her remaining mental status examination was within

7

normal limits (AR 213). He concluded that her mood was stable (AR 213). Plaintiff informed Dr. Sipple that she wanted to discontinue her medications in order to get pregnant (AR 213). Dr. Sipple decreased her Effexor dosage but continued her on Lamictal (AR 213; 229).

On May 8, 2008, Plaintiff returned to Stairways and complained of trouble sleeping (AR 212). On mental status examination, Dr. Sipple found her "anxiety state" was mild and her affect was anxious (AR 212). Her remaining examination was unremarkable (AR 212). Dr. Sipple noted that Plaintiff was tolerating the decreased Effexor dosage (AR 212).

On May 9, 2008, Dr. Sipple completed a medical source statement relative to Plaintiff's mental abilities to perform unskilled work on a regular and continuing basis (AR 211). He concluded that she would be unable to maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes (AR 211). Dr. Sipple indicated that his opinion was based upon mental status examinations, his observation of Plaintiff, her clinical history, and/or a review of symptoms/signs (AR 211).

When seen by Dr. Sipple at Stairways on May 22, 2008, Plaintiff complained that she was "very irritable" after discontinuing Effexor (AR 235). Dr. Sipple found she was mildly irritable on mental status examination and continued her on Lamictal (AR 235; 248).

On June 5, 2008, Plaintiff complained that she was very irritable, depressed and that her mood swings had worsened (AR 234). On mental status examination, Dr. Sipple found her "anxiety state" was mild and her affect was anxious (AR 234). She was continued on Lamictal and Prozac was prescribed (AR 234; 248). On June 16, 2008 Dr. Sipple noted that Plaintiff was doing much better but she still had sleep disturbances (AR 232).

On September 5, 2008, Plaintiff complained of racing thoughts, increased irritability and anxiety (AR 251). Dr. Sipple found Plaintiff had mild anxiety and her affect was irritable (AR

251). He discontinued Prozac and restarted her on Effexor along with the Lamictal (AR 248; 251). On September 23, 2008, Plaintiff complained of insomnia, mood swings and increased stress, and Dr. Sipple noted she was anxious (AR 250). He increased her Effexor dosage and continued her on Lamictal (AR 250).

Finally, on November 12, 2008, Plaintiff complained of increased irritability, increased depression, anger and mood swings (AR 249). Dr. Sipple found her affect was anxious (AR 250). He doubled her Effexor dosage and continued her on Lamictal (AR 247; 250).

Plaintiff and Connie Martindale, a vocational expert, testified at the hearing held by the ALJ on December 16, 2008 (AR 19-58). Plaintiff testified that she lived with her boyfriend and eight year old son (AR 25). Plaintiff stated that she stopped working full time in October 2006 due to stress, depression and anxiety attacks (AR 33). She claimed working part time did not alleviate her symptoms, and therefore she stopped working in April 2007 (AR 24; 34). She indicated that she was unable to control her outbursts at her son and other people (AR 25).

Plaintiff testified that her mood swings were unpredictable, and some days were better than others (AR 34-35). On bad days, Plaintiff claimed that her mind raced, she isolated herself and suffered from depression (AR 35). She indicated that she did not want to engage with her son, cook or clean (AR 36). Plaintiff testified that she would be unable to work on a bad day (AR 39). Plaintiff indicated that on a typical day, she helped her son get ready for school, and returned to bed after getting him on the bus (AR 40). She performed housework at her own pace while her son was at school, and fed him when he arrived home (AR 40-41). Plaintiff claimed she stayed home most of the time (AR 40). She was not involved in any social activities, but she occasionally volunteered at her son's school (AR 42).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform work at all exertional levels, not involving assembly line type jobs, that she could perform at her own pace and that had very limited contact with the general public (AR 50; 52-53). The vocational expert testified that such an individual could perform the light positions of an order filler/marker, router, and storage facility clerk (AR 51-53).

9

Following the hearing, the ALJ issued a written decision which found that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Act (AR 10-18). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

### IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly

disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through June 30, 2010 (AR 12). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that Plaintiff's depression and anxiety were severe impairments, but determined at step three that she did not meet a listing (AR 13-14). The ALJ found that she was able to perform a full range of work at all exertional levels, limited to indirect supervision and minimal contact with the public, avoiding production lines and other jobs that needed to be done on a strict schedule (AR 14).

11

At the final step, the ALJ concluded that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 16-17). The ALJ also concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible (AR 15). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ improperly rejected the report of her treating physician, Dr. Sipple. The Third Circuit has repeatedly held that "[a] cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999)) (citations omitted); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3rd Cir. 1994). As such, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993). A treating source's opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Fargnoli v. Halter*, 247 F.3d 34, 43 (3rd Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In choosing to reject a treating physician's opinion, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different judgment"); *Moffat v. Astrue*, 2010 WL 3896444 at *6 (W.D.Pa. 2010) ("It is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical

evidence."). Finally, where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

Here, Dr. Sipple found that Plaintiff could not, on a regular and continuing basis, maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes (AR 211). In fashioning the Plaintiff's residual functional capacity ("RFC"),[3] the ALJ stated the following with respect to Dr. Sipple's opinion:

> On May 9, 2008, Matthew Sipple, D.O., completed a one page checklist form opining that the claimant lacked the mental abilities and aptitudes needed to do unskilled work (Exhibit 6F).
>
> The undersigned gives very little weight to this opinion. It is unclear from the record what Dr. Sipple's treatment relationship is with the claimant. The checklist form does not give specific reasons for the alleged limitations. The opinions are also inconsistent with a detailed consultative examination, treatment records, and the claimant's reported daily activities.

(AR 16). Plaintiff contends that the ALJ's analysis of Dr. Sipple's opinion is not supported by substantial evidence. I agree. The ALJ assigned Dr. Sipple's opinion "very little weight" because, in her view, the treatment relationship was "unclear" (AR 16). However, the Stairways treatment records clearly demonstrate that, from the beginning of Plaintiff's treatment, Dr. Sipple

---

[3] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

13

was part of a "team" of providers involved in Plaintiff's treatment plan (AR 223). Plaintiff was seen and evaluated by Dr. Sipple on at least ten separate occasions between December 2007 and November 2008 (AR 212-216; 226; 228-229; 232; 234-235; 237-238; 249-251). On remand, the ALJ is directed to evaluate Dr. Sipple's opinion consistent with the standards for evaluating a treating physician's opinion.

The ALJ's decision to afford minimal weight to Dr. Sipple's opinion was also based on her conclusion that his report was nothing more than a checklist form lacking "specific reasons for the alleged limitations" (AR 16). Once again, this finding is not supported by substantial evidence. Dr. Sipple's report indicated that his opinions "[were] based upon mental status examinations, observations of [Plaintiff], clinical history, and/or review of symptoms/signs (AR 211). Those examinations, observations, clinical history and/or symptoms and signs appear throughout the Stairways treatment notes.

In addition, the ALJ's finding that Dr. Sipple's opinion was inconsistent with "treatment records" is based upon a selective and/or inadequate review of the medical records. In evaluating a claim for benefits, the ALJ must consider all the evidence in the case. *Plummer*, 186 F.3d at 429. The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano*, 606 F.2 403, 407 (3rd Cir. 1979), and, as previously stated, "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266. Without this type of explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705-07 (3rd Cir. 1981); *see also Plummer*, 186 F.3d at 429 (ALJ must give some reason for discounting the evidence he rejects).

The ALJ's analysis of the treatment records is as follows:

The claimant has received mental health treatment at Stairways Behavioral Health (Exhibits 7F-11F). The records reflect that the claimant was generally doing well on prescribed medications with no severe symptoms. On August 17, 2008, the claimant was still having problems sleeping and still having mood swings but not as much [as] before with no other reported problems (Exhibit 7F, page 3). The claimant also wanted to start trying to get pregnant. On November 12, 2008, the

> claimant complained of some increased irritability, depression, and mild anxiety (Exhibit 11F, page 4). She was tolerating her medications well.
>
> • • •
>
> … Treatment records reflect some mild problems with mood swings, irritability, and sleep disturbances, but such relatively mild problems do not prevent the claimant from performing all work activity. Treatment records indicate her symptoms are improved with medication and therapy with no reported side effects from medication. …

(AR 13; 15). Absent from the ALJ's discussion, however, are the remaining treatment note entries, which reflect the following: in March 2006, Plaintiff complained of irritability, mood swings and a high energy level, and Dr. Su found that she appeared somewhat hypo-manic (AR 183-184). In July 2006, Plaintiff's treatment goals of an improved mood had not been met and her Lamictal dosage was doubled (AR 230). Plaintiff's treatment goals remained unmet in November 2006, and her medications were changed (AR 221; 230). Plaintiff reported depression and poor energy in February 2007, and Dr. Su noted she had a blunt affect and he doubled her Effexor dosage (AR 220; 230). In May 2007, Plaintiff complained of increased mood swings, anxiety, insomnia and irritability, and informed Dr. Su that she was quitting her job because she was "too stressed out" (AR 220). Dr. Su increased her Lamictal dosage (AR 220). Trazodone was added to Plaintiff's medication regimen at her October 2007 visit to help combat her sleep problems (AR 217). In December 2007, Dr. Sipple noted that Plaintiff was "stable" on her medications, but Plaintiff acknowledged occasional thoughts of self-harm (AR 214; 216). Between February 2008 and May 2008, Plaintiff complained of insomnia, and she exhibited an anxious affect (AR 212-215). On May 22, 2008, Plaintiff complained that she had been very irritable, and Dr. Sipple noted that she was mildly irritable on mental status examination (AR 235). Plaintiff continued to complain of increased irritability, anxiety, anger, mood swings and/or insomnia during her visits with Dr. Sipple between June 2008 and November 2008, and Dr. Sipple consistently reported that she was anxious (AR 234; 248-250).

The ALJ further failed to consider Plaintiff's medication regimen in her review of the treatment notes. An ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate … symptoms." Social Security Ruling

15

("*SSR*") 96-7p, 10996 WL 374186 at *3. While the ALJ highlighted a treatment note entry dated November 12, 2008 that Plaintiff was tolerating her medications well, she failed to note that Dr. Sipple doubled Plaintiff's Effexor dosage at that visit (AR 247). There is no discussion by the ALJ that Plaintiff's medications were consistently changed, increased and/or doubled throughout her treatment in order to alleviate her symptoms (AR 217; 220; 230; 234; 248; 250-251).

In sum, the ALJ failed to fully consider all pertinent findings in the Stairways treatment records. Consequently, on remand, the ALJ is directed to address this evidence consistent with the dictates of *Cotter*.

The ALJ also concluded that Dr. Sipple's opinion was inconsistent with the "detailed consultative examination" of Dr. Hillin, the psychologist who performed an evaluation of Plaintiff on January 26, 2007. Dr. Hillin concluded that Plaintiff was only slightly limited in her ability to interact appropriately with the public; and moderately limited in her ability to interact appropriately with supervisors and co-workers, and respond appropriately to work pressures in a usual work setting (AR 192). He further concluded that Plaintiff was only slightly to moderately limited in her ability to respond appropriately to changes in a routine work setting (AR 192). Thus, Dr. Hillin's opinion was clearly at odds with Dr. Sipple's opinion.

In deciding the weight to be accorded conflicting medical opinions however, the ALJ is required to consider numerous factors in determining which opinions are entitled to more weight, including the examining and treatment relationship, the specialization of the medical source, the opinion's supportability and consistency, and any other factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(d); 416.927(d). Here, the ALJ erroneously found that Dr. Sipple was not a treating physician. Accordingly, on remand, the ALJ is directed evaluate the opinion evidence in accordance with the Commissioner's regulations.[4]

Finally, Plaintiff challenges the ALJ's reliance on her reported daily activities in discrediting Dr. Sipple's opinion. In light of the Court's finding that the ALJ's review of the medical record was inadequate and that his treatment of the opinion evidence was not supported

---

[4] The ALJ's decision also does not reflect the weight she accorded the opinion of Dr. Milke, the non-examining state agency reviewing psychologist, other than according it "appropriate weight" (AR 15). To the extent the ALJ relies upon this opinion, she is directed to evaluate and adequately explain her reasoning consistent with the regulations.

16

by substantial evidence, the ALJ's reliance on Plaintiff's daily activities cannot stand. The ALJ is directed to re-evaluate Plaintiff's credibility on remand.

## V. CONCLUSION

For the reasons discussed above, the Defendant's Motion will be denied and the Plaintiff's Motion will be granted only to the extent she seeks a remand for further consideration. The matter will be remanded to the Commissioner for further proceedings.[5] An appropriate Order follows.

---

[5] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3rd Cir. 2010).

17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA LYNNE NEWMAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 10-127 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 12th day of July, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [ECF No. 10] is DENIED, and the Plaintiff's Motion for Summary Judgment [ECF No. 7] is GRANTED only to the extent she seeks a remand for further consideration by the Commissioner. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                              s/ Sean J. McLaughlin
                                                United States District Judge

cm:    All parties of record